UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VENDEVER LLC, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-201-B |
| | § | |
| INTERMATIC MANUFACTURING LTD., MARTY MAN SMITH, and RALPH ORLOWSKI, | § | |
| | § | |
|     Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss filed March 22, 2011 (doc. 16) by Defendants Intermatic Manufacturing Ltd., Marty Man Smith, and Ralph Orlowski (collectively, "Intermatic"). Having considered the Motion, the Court finds that it should be and hereby is **GRANTED IN PART** and **DENIED IN PART**.

I.

BACKGROUND

This action arises out of Intermatic's purported false advertising and unfair practices in connection with its marketing and sales of cotton candy vending machines. Compl. ¶ 7. VendEver LLC ("VendEver"), a Nevada limited liability company, and Intermatic, a company based in the United Kingdom, market and distribute cotton candy vending machines and are the only companies selling cotton candy vending machines in the United States. *Id.* at ¶¶ 1-2, 6, 62. VendEver alleges that Intermatic falsely advertised its vending machines as being patented for the last three years

although its machines only have pending patent applications in the United States and Europe and had no patent anywhere until August 2010, when it received a patent in New Zealand. *Id.* at ¶¶ 8-12. Intermatic made these representations and others, such as its claim that its "patented water system" must be used to ensure that cotton candy "stays on the stick," in order to discourage consumers from purchasing VendEver's vending machines. *Id.* at ¶ 12. Intermatic has also threatened patent and trademark litigation against VendEver and has represented to consumers that "they might have a problem if they purchase VendEver's machine" instead of Intermatic's, despite Intermatic's knowledge that VendEver has not infringed any patent rights owned by Intermatic. *Id.* at ¶¶ 15-16. Intermatic has also threatened to sue VendEver for "cybersquatting" and attempted to interfere with VendEver's attempts to obtain industry certification for VendEver's machines. Id. at ¶¶ 17-22. Intermatic's representations have resulted in VendEver losing potential sales. *Id.* at ¶¶ 25-27. Also, Intermatic conspired with Grand Products, Inc. ("Grand Products"), the manufacturer of Intermatic's cotton candy vending machines, to unfairly compete with VendEver in the cotton candy vending machine market. *Id.* at ¶¶ 5, 23-24.

On February 1, 2011 VendEver filed its complaint[1] asserting claims against Intermatic; Marty Man Smith ("Smith"), Intermatic's Vice President of North American Sales; Ralph Orlowski ("Orlowski"), Intermatic's business development manager; and Grand Products.[2] *Id.* at ¶¶ 3-5. In total, VendEver brings eight causes of action against Defendants. Compl. ¶¶ 28-75. VendEver asserts

---

[1]On the same day, VendEver filed a separate *qui tam* suit asserting a false marking claim under 35 U.S.C. § 292(b) against Intermatic based on Intermatic's representations that its cotton candy machine was patented. That suit, Case No. 3:11-cv-202-P, is currently pending before Judge Jorge A. Solis.

[2]VendEver's claims against Grand Products were dismissed without prejudice pursuant to the parties' stipulation of dismissal. Order Apr. 28, 2011.

that its claims arise from marketing practices utilized by the defendants in an illegal attempt to restrain trade in the market for cotton candy vending machines. *See id.* at ¶ 7. On March 22, 2011, Intermatic moved to dismiss VendEver's Complaint under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and 9(b) ("Rule 9(b)"). Intermatic also moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") for lack of personal jurisdiction. The Motion is now ripe for disposition.

## II.

## LEGAL STANDARD

*A.    Federal Rule of Civil Procedure 12(b)(6)*

Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556. In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6) "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). A Rule 12(b)(6) motion to dismiss should be

granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.[3]

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Rule 12(b)(6) standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

B.  *Federal Rule of Civil Procedure 12(b)(2)*

The plaintiff bears the burden of proof to show that a nonresident defendant is subject to the Court's jurisdiction. However, a plaintiff need only establish a *prima facie* case of jurisdiction; proof by a preponderance of the evidence is not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). After the *prima facie* case is made that a defendant purposefully established minimum contacts within the forum state, the defendant bears the burden to present "a compelling case that the

---

[3]Intermatic argues that Rule 9(b) applies to VendEver's claims. However, the Court's examination of relevant case law does not show that this Court is required to or should apply Rule 9(b)'s heightened pleading standard. Accordingly, the Court reviews VendEver's claims under Rule 8(a). *See, e.g.*, *Microsoft Corp. v. Chen*, 2005 WL 6465732, *1-2 (S.D. Tex. Sept. 29, 2005) (discussing cases applying Rule 9(b) and declining to apply Rule 9(b) to plaintiffs' Lanham Act claims and other claims given that the claims "do not rely on allegations of fraud").

presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The Court's focus is "the relationship among the defendant, the forum and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008). A single act, such as a contract, may be sufficient to confer personal jurisdiction, but that single act must create "a substantial connection" as opposed to an attenuated one with the forum. *Burger King Corp.*, 471 U.S. at 476 n.18.

In establishing jurisdiction, two preconditions must be met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the Constitution. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the Defendants is constitutionally permissible. *Id.* at 1067-68 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it should reasonably anticipate being hailed into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id.* at 1068.

The "minimum contacts" test can be met by contacts giving rise to either general or personal jurisdiction. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). Specific

jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* (citation omitted); *see also Gustafson v. Provider Healthnet Servs., Inc.*, 118 S.W.3d 479, 482 (Tex. App.–Dallas 2003) (recognizing Texas long-arm statute extends jurisdiction over parties doing business in Texas). In either context, the Court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stroman Realty*, 513 F.3d at 484; *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

## III.

## ANALYSIS

A.  *Personal Jurisdiction Over Intermatic*

Intermatic argues that it is not subject to personal jurisdiction in Texas because it is an entity based in the United Kingdom and which does no business and has no contacts in Texas. However, Intermatic essentially concedes that VendEver's complaint sufficiently alleges the Court's jurisdiction, stating that "Plaintiff may be entitled to limited discovery on its personal jurisdictional argument." Mot. Dismiss 2 n.2. The Complaint alleges Intermatic "has entered into an agreement for the sale of a substantial number of its vending machines to CEC Entertainment," which is based in Irving, Texas, and "CEC Entertainment's decision to purchase vending machines from Intermatic, rather than from VendEver, was directly affected" by Intermatic's alleged misconduct. Compl. ¶ 26. Although the Complaint alleges only this single contact within the Northern District, the alleged sale demonstrates that Intermatic purposefully directed its activities and contract towards Texas such that it could reasonably anticipate being haled into this Court. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Burger King*, 471 U.S. at 475-76; *see also* Order Mar.

22, 2011 at 11-12, Case No. 3:11-cv-202, *United States ex rel. VendEver v. Intermatic Mfg. Ltd.* (finding that complaint's allegation that Intermatic sells cotton candy vending machines and has entered into contracts for the sale of these machines in Texas sufficiently pleaded minimum contracts with the state of Texas). In light of the alleged contract, the Court finds that the Complaint alleges sufficient contacts to meet the minimum contacts requirement. The Court also finds that the exercise of jurisdiction over Intermatic does not offend traditional notions of fair play and substantial justice. Accordingly, VendEver has sufficiently pled personal jurisdiction over Intermatic and Intermatic's Motion, to the extent it seeks dismissal of VendEver's claims against it under Rule 12(b)(2), is hereby **DENIED**.

B.  *False Advertising Claims*

Under Section 43(a) of the Lanham Act, a plaintiff must allege that the defendant published "(1) [a] false or misleading statement of fact about a product; (2) [s]uch statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) [t]he deception is material, in that it is likely to influence the consumer's purchasing decision; (4) [t]he product is in interstate commerce; and (5) [t]he plaintiff has been or is likely to be injured as a result of the statement at issue." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). VendEver's Complaint alleges that "Intermatic has repeatedly claimed to consumers that it sells the 'first and only patented cotton candy vending machine,'" Intermatic printed language on its machines suggesting that it had U.S. and European patents on its machine, and these representations and others had the capacity to deceive or did in fact deceive consumers, resulting or potentially resulting in lost sales to VendEver. Compl. ¶¶ 8-12, 26-27. Such allegations are sufficient to state a claim for Lanham Act false advertising. Although Intermatic argues that the patent markings are

true statements because they correctly identify serial numbers for European and U.S. patent applications, the Complaint sufficiently alleges that such markings are misleading given that they suggest that Intermatic held actual U.S. and European patents with those numbers. The Court also rejects Intermatic's argument that the Complaint must allege more facts such as who made the misleading or potentially misleading statements, when the statements were made, and which specific consumers were affected by Intermatic's misconduct. *See* Mot. Dismiss 3-5. The Court's examination of the relevant case law does not show this heightened pleading standard akin to Rule 9(b) should apply to VendEver's claims. Accordingly, Intermatic's Motion, to the extent it seeks dismissal of the Complaint's Lanham Act false advertising claim, is hereby **DENIED**.

Intermatic does not separately address the common law false advertising claim but instead argues that both the Lanham Act false advertising claim and the common law false advertising claim do not allege sufficient facts to support these claims. Unfortunately, Intermatic does not provide sufficient legal authority regarding Texas common law false advertising such that the Court may determine whether or not VendEver's common law false advertising claim alleges sufficient facts to state a claim that is plausible on its face.[4] In light of this deficiency in Intermatic's Motion and in light of the Court's findings with respect to the Lanham Act false advertising claim, the Court **DENIES** Intermatic's Motion to Dismiss to the extent it seeks dismissal of VendEver's common law false advertising claim.

---

[4] It is unclear whether there is in fact a common law cause of action for false advertising under Texas law. However, Intermatic does not argue that there is no such cause of action, and Intermatic, as the movant, has the burden of establishing that the Complaint does not state a claim for common law false advertising.

C.  *Business Disparagement*

In order to establish a business disparagement claim under Texas law, a plaintiff must allege that "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) resulting in special damages to the plaintiff." *Forbes v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). Intermatic seeks dismissal of the business disparagement claim because "[n]owhere in VendEver's Complaint is there an allegation that any defendant said any specific statement about VendEver or its machines, let alone a false and disparaging statement." Mot. Dismiss 5. Intermatic also argues that the complaint fails to properly allege special damages.

The Court finds that the Complaint sufficiently pleads its business disparagement claim. The Complaint alleges that Intermatic represented that VendEver was infringing Intermatic's patents, when in fact Intermatic knew it held no patent in the U.S. or Europe, in order to interfere with VendEver's business, resulting in lost sales, including a potential contract with CEC Entertainment. Also, the Court can reasonably infer that a competing business' disparaging assertions about another's products and suggestions that customers would be entangled in litigation if they purchased its products "could have plausibly caused economic losses, such as the loss of sales, trade, or dealings." *See Marquis v. OmniGuide, Inc.*, 2011 WL 321112, at *7 (N.D. Tex. Jan. 28, 2011). Of course, eventually VendEver will have to provide proof of its direct pecuniary loss due to Intermatic's statements. *See, e.g., Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996). However, accepting these allegations as true, the Complaint raises a plausible inference that Intermatic made disparaging statements about VendEver with malice and without privilege, resulting in economic damages. Accordingly, Intermatic's Motion, to the extent it seeks dismissal of Count Three (business disparagement) is **DENIED**.

D.     *Defamation*

To state a claim for defamation under Texas law, the plaintiff must allege that: (1) the defendant published a statement; (2) the statement was defamatory and concerned the plaintiff; (3) the defendant acted with actual malice (if defendant is a public official) or negligence (if the plaintiff is a private individual) regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Defamation claims "must specifically state the time and place of the publication," *Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158, at *5 (N.D. Tex. July 2, 1998), as well as the alleged defamatory statement and the speaker, *Ameen v. Merck & Co.*, 226 Fed. Appx. 363, 370 (5th Cir. 2007) (citations omitted).

VendEver's Complaint fails to allege sufficient facts to survive Intermatic's Motion to Dismiss. The Complaint does allege that Intermatic made defamatory statements about VendEver, including statements that VendEver was infringing Intermatic's patents and that VendEver's machines would not work properly without using these patents. The Complaint also alleges that Intermatic made these statements knowing that VendEver was not infringing any patents Intermatic held. However, the Complaint does not set forth the time and place of the publication of these or any other defamatory statements, nor does it set forth the speaker of these statements. As such, the Court **GRANTS** Intermatic's Motion to Dismiss to the extent it seeks dismissal of the Complaint's defamation claim under Rule 12(b)(6), and Count Four is hereby **DISMISSED**.[5]

---

[5] In its response in opposition to Intermatic's Motion, VendEver stated its intention to file a stipulation of dismissal without prejudice with respect to its defamation claim, Pl.'s Opp'n 8 n.5, although the Court has not yet received the intended stipulation.

E.    *Tortious Interference with Reasonable Expectancy*

To state a claim for tortious interference with prospective contractual relations under Texas law,[6] a plaintiff must allege "(1) a reasonable probability that the plaintiff would have entered into a business relationship, (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring, (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct, and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference." *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 863 (N.D. Tex. 2009) (quoting *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.–Houston 2001, pet. denied)); *see also M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010) (setting forth same elements for "tortious interference with prospective business relations"). To show a "reasonable probability," a plaintiff must show that, absent the defendant's misconduct, the plaintiff would have won the contract. *Verkin v. Melroy*, 699 F.2d 729, 732 (5th Cir. 1983). "It need not be absolutely certain that the prospective contract would have been made were it not for such interference . . . [but] a reasonable assurance thereof in view of all the circumstances is generally sufficient." *Id.* Further, "harm that results only from lawful competition is not compensable by the interference tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001).

As discussed above, VendEver has sufficiently pled the independent torts of false advertising and business disparagement, including actual damage or loss as a result of these acts. *See* Sections

---

[6]Courts applying Texas law use various terms such as "tortious interference with prospective contracts," "tortious interference with a prospective business relationship" and "tortious interference with reasonable expectancy" interchangeably.

III(B)-(C), *supra*. Additionally, VendEver pleads sufficient facts which, if true, show that there was a reasonable probability that it would have entered into a business relationship with CEC Entertainment if not for Intermatic's tortious acts, given that VendEver was Intermatic's only competitor. *See L-3 Comms. Integrated Sys., L.P. v. Lockheed Martin Corp.*, 2008 WL 4391020, at *11 (N.D. Tex. Sept. 29, 2008). Taking these factual allegations as true, the Court can reasonably infer that Intermatic knew with substantial likelihood that its misleading statements about the status of its patents, the threats about potential patent infringement litigation, and its disparaging statements about VendEver's products would interfere with Plaintiff's prospective contracts. As such, the Complaint sufficiently alleges a claim for tortious inference with a reasonable expectancy, and Intermatic's Motion, to the extent it seeks dismissal of Count Five, is **DENIED**.[7]

F.      *Common Law Unfair Competition*

Under Texas law, unfair competition "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). This cause of action requires that the plaintiff allege "an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business." *Taylor*, 216 F.3d at 486. The illegal act need not need to violate criminal law, but it must be an independent tort. *Id.* This Court has already determined that VendEver's Complaint sufficiently pleads the independent torts of false advertising, business

---

[7]The Court agrees with Intermatic's contention that the factual allegations surrounding Intermatic's interference with VendEver's industry certification through the National Automatic Merchandising Association do not state a claim for tortious interference with a reasonable expectancy.

disparagement, and tortious interference with reasonable expectancy. As such, the Complaint pleads that Intermatic committed illegal acts which are contrary to honest business practices and which interfered with VendEver's business, and Intermatic's Motion, to the extent it seeks dismissal of Count Seven (common law unfair competition), is **DENIED**.

G.   *Conspiracy Claims*

A claim under Section 1 of the Sherman Act ("§ 1") requires the plaintiff allege (1) the defendants engaged in a conspiracy, (2) the conspiracy restrained trade, (3) in a particular market. *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Ctrs., Inc.*, 200 F.3d 307, 312 (5th Cir. 2000). *Twombly*, 550 U.S. at 548. In pleading a § 1 conspiracy, "a general allegation of conspiracy, without a statement of the facts constituting the conspiracy to restrain trade, its object and accomplishment, is but an allegation of a legal conclusion, which is insufficient to constitute a cause of action." *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 913-14 (5th Cir. 1952). "Without more . . . a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-557. Further, "an internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police. The officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984). Given these reasons and the need for coordination for within a firm in order to compete, "officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy." *Id.* Additionally, "[i]n the absence of any allegation whatever to indicate that the agents

of a corporation were acting other than their normal capacities, [a] plaintiff [fails] to state a cause of action based on conspiracy under § 1 of the Act." *Nelson Radio*, 200 F.2d at 914.

To state a claim for conspiracy under Texas law, Plaintiff must allege an agreement between "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Civil conspiracy is frequently referred to as a "derivative tort" because "a defendant's liability for conspiracy depends on participation in some underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). A "meeting of the minds" occurs when the defendant and one or more conspirators have a "preconceived plan and unity of design and purpose," or "some mutual mental action coupled with an intent to commit the act which results in injury." *Goldstein v. Mortensen*, 113 S.W.3d 769, 779 (Tex. App.–Austin 2003) (citations omitted). To state a claim of civil conspiracy against an employee or agent of a principal, the employee or agent must have been acting outside the scope of his employment or agency. *Ameen*, 226 Fed. Appx. at 371.

VendEver's Complaint is deficient in alleging both the Sherman Act § 1 claim and the common law conspiracy claim. The Complaint fails to allege a Sherman Act § 1 conspiracy between Orlowski, Smith, and Intermatic, given that Smith is alleged to be Intermatic's Vice President of North American Sales and Orlowski is alleged to be Intermatic's business development manager. The fact that they are alleged to be "independent contractors" does not change the fact that they are alleged to be officers of the same firm and are therefore incapable of conspiring with each other to restrain trade. The Complaint also fails to allege a common law conspiracy between Orlowski,

Smith, and Intermatic, given that the Complaint fails to allege that Smith and Orlowski were alleged to be acting beyond the scope of their employment. *See Ameen*, 226 Fed. Appx. at 371.

The conspiracy claims also fail to the extent they allege conspiracies between Intermatic (along with Smith and Orlowski) and Grand Products.[8] The Complaint does state that Grand Products manufactures cotton candy vending machines marketed by Intermatic and that Grand Products assists Intermatic with the marketing of its vending machines. Compl. ¶ 5. However, aside from these allegations and the actual "counts" themselves, which largely only repeat the elements of Sherman Act conspiracies and common law conspiracies, the only other allegations regarding Grand Products state that "Smith, Orlowski and Grand have conspired with Intermatic to unfairly compete with VendEver in the market for cotton candy vending machines" and that they "have published false and misleading statements, messages, and/or information, which are described in greater detail above, in the course of their own marketing of Intermatic's cotton candy vending machines in competition with VendEver." *Id.* at ¶¶ 23-24. Unfortunately, the rest of the Complaint only describes potentially false and misleading statements by Intermatic and sets forth no facts regarding the agreement between Grand Products and Intermatic. At no time does the Complaint allege sufficient facts which, if true, would allow the Court to infer that Grand Products and Intermatic agreed to commit acts which would illegally restrain trade or commit any of the underlying torts which VendEver has alleged. *See, e.g., Twombly*, 550 U.S. at 564 n.10 (faulting

---

[8] The Court notes that a plaintiff may allege a claim for civil conspiracy even though the alleged co-conspirator or conspirators are not parties to the case. *See, e.g., Herpich v. Wilder*, 430 F.2d 818, 819 (5th Cir. 1970) (allowing conspiracy claims to proceed against defendant who allegedly conspired with co-conspirators who were not parties to the case). As such, the fact that VendEver dismissed its claims against Grand Products does not prevent VendEver from asserting conspiracy claims against Intermatic based on its alleged conspiracy with Grand Products, provided that it successfully pleads its conspiracy counts.

complaint for failure to list any specific time, place, or person involved in the alleged antitrust conspiracy). Nor does the Complaint properly allege harm to competition generally, rather than harm solely to VendEver. Given these deficiencies, Intermatic's Motion, to the extent it seeks dismissal of Counts Six and Eight, is hereby **GRANTED**. The Complaint's Sherman Act § 1 claim and common law conspiracy claims are hereby **DISMISSED**.

## IV.

## CONCLUSION

For the reasons stated above, Intermatic's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The Court **DENIES** Intermatic's Motion to the extent it seeks dismissal of Counts One, Two, Three, Five, and Seven under Rule 12(b)(6). The Court also **DENIES** Intermatic's Motion to the extent it seeks to dismiss VendEver's Complaint as to Intermatic for lack of personal jurisdiction under Rule 12(b)(2). The Court **GRANTS** Intermatic's Motion to the extent it seeks to dismiss Counts Four (defamation), Six (conspiracy to restrain trade in violation of Sherman Act), and Eight (common law civil conspiracy). VendEver's defamation, Sherman Act, and common law conspiracy claims are hereby **DISMISSED WITHOUT PREJUDICE**.

Dismissal of a claim short of a merits review is not taken lightly by the Court. Thus, a plaintiff should be given the opportunity to amend a Complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so"); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only

be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted"). Moreover, VendEver has specifically requested the opportunity to replead.

Accordingly, if VendEver is able to replead any Counts to overcome all of the grounds stated herein for dismissal, it shall do so by no later than twenty (20) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should VendEver replead, Defendants are hereby granted leave to file a response to VendEver's synopsis. Any such responses shall not exceed five (5) pages and must be filed within ten calendar days of the repleading. No further briefing will be permitted.

**SO ORDERED.**

**SIGNED: September 16, 2011**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE